# EXHIBIT A




APR 2 3 2007

I hereby attest and certify on _____
that the foregoing document is a full, true
and correct copy of the original on file in
my office, and in my legal custody.

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**ROSALIND TYUS-SIMON**
DEPUTY CLERK

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2006 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 07-00134 |
| Plaintiff, ) | I N D I C T M E N T |
| v. ) | [18 U.S.C. § 1341: Mail Fraud; |
| SONNY VLEISIDES, ) | 18 U.S.C. § 1956(a)(1)(A)(i): |
| JAMES RAY HOUSTON, ) | Promotional Money Laundering; |
| aka Rex Rogers, ) | 18 U.S.C. § 2: Aiding and |
| DENNIS EMMETT, ) | Abetting and Causing an Act To |
| WILLIAM CLOUD, and ) | Be Done] |
| SCOTT HENRY WALTHER, ) | |
| Defendants. ) | |

The Grand Jury charges:

COUNTS ONE THROUGH ELEVEN

[18 U.S.C. §§ 1341, 2]

A.  INTRODUCTION

   1.  At all times relevant to this Indictment:

      a.  Shamrock Agency, German Swiss Group, World Expert Fund, Mutual Medical Insurance Co, Old Amsterdam Trust Co, Euro

EML:eml



1  American Fax Co, European Union Commission, EU American Payment
2  Co, Global Search Network, North American Foreign Payments
3  Services, Worldwide Verification Service, and others
4  (collectively, the "Fraudulent Lottery and Pension Companies")
5  were companies purporting to, for a fee, enter individuals in the
6  United States into foreign and domestic lotteries, and to set up
7  pension accounts.
8         b.   Defendants SONNY VLEISIDES ("VLEISIDES"), JAMES
9  RAY HOUSTON, aka Rex Rogers ("HOUSTON"), and DENNIS EMMETT
10 ("EMMETT") owned and controlled portions of the Fraudulent
11 Lottery and Pension Companies.
12        c.   Defendant WILLIAM CLOUD ("CLOUD") worked for the
13 Fraudulent Lottery and Pension Companies, which work included
14 handling offshore mailing addresses, creating and maintaining
15 victim lists, and handling and directing the handling of victim
16 funds.
17        d.   Defendant SCOTT HENRY WALTHER ("WALTHER") worked
18 for the Fraudulent Lottery and Pension Companies, which work
19 included overseeing the finances of the Fraudulent Lottery and
20 Pension Companies, and controlling some of the bank accounts
21 related to those entities.
22 B.   THE SCHEME TO DEFRAUD
23     2.   Beginning in or about 1990, and continuing to at least
24 in or about July 2006, in Los Angeles, Orange, Ventura, San Louis
25 Obispo, and Riverside Counties, within the Central District of
26 California, and elsewhere, defendants VLEISIDES, HOUSTON, EMMETT,
27 CLOUD, and WALTHER, together with others known and unknown to the
28 Grand Jury, knowingly and with intent to defraud, devised,

participated in, and executed a scheme to defraud victims as to a material matter, and to obtain money and property from such victims by means of material false and fraudulent pretenses, representations, and promises, and by the concealment of material facts.

3. To execute the scheme to defraud, defendants VLEISIDES, HOUSTON, EMMETT, CLOUD, and WALTHER and others known and unknown to the Grand Jury set up and operated the Fraudulent Lottery and Pension Companies. The scheme operated as follows:

    a. Defendants VLEISIDES, HOUSTON, EMMETT, CLOUD, and WALTHER, and others known and unknown to the Grand Jury created and sent over one million solicitations purportedly offering increased chances of winning foreign and domestic lotteries such as "The Australian Lottery," "The International Irish Sweepstakes," "The El Gordo," "The Bunderschmidt," "The NY Super 7," and the "Triple Crown Lottery." The solicitations claimed that the victims were purchasing "positions" in tickets to lotteries that would be grouped together or "pooled" to buy larger blocks of tickets. The solicitations contained various misrepresentations, including but not limited to the following:

        i. That money sent by participants in the pool would be used to purchase tickets in lotteries, horse races, and other such games;

        ii. That participants in the pool had a chance to win millions of dollars;

        iii. That previous participants in the pool had won millions of dollars through the pool;

      iv.    That the companies were backed by governmental and/or legitimate lottery entities;

      v.    That the companies were well-established and had been in business for long periods of time; and

      vi.    That winnings invested into the lottery's trust or pension accounts would pay monthly pension checks until the end of the victim's life, and then would pay an amount to a beneficiary as if the money were a life insurance policy.

    b.    The solicitations induced the victims to send payments to the Fraudulent Lottery and Pension Companies via the United States mail, in that along with the solicitations, defendants VLEISIDES, HOUSTON, EMMETT, CLOUD, and WALTHER and others known and unknown to the Grand Jury provided the victims with envelopes preaddressed to commercial mail receiving agencies established by defendant CLOUD and others known and unknown to the Grand Jury in the Netherlands and Ireland, among other locations.

    c.    At the direction of defendants VLEISIDES, HOUSTON, and EMMETT, defendant WALTHER and others known and unknown to the Grand Jury first deposited the victims' money into accounts defendant WALTHER and others known and unknown to the Grand Jury established at numerous banks in accounts with names that sounded like official lotteries, for example: Shamrock Agency, World Expert, Old Amsterdam, German Swiss, Global Search Newtwork, and EUC, and official pensions, for example: Mutual Medical Insurance Company ("the Deposit Accounts").

    d.    After the victims' money was deposited into the Deposit Accounts, at the direction of defendants VLEISIDES,

HOUSTON, and EMMETT, defendant WALTHER and others known and unknown to the Grand Jury transferred some of the victims' money into another set of accounts, with the following names, among others: North American Payment and EU Payment Service ("the Payment Accounts").

   e. From the Payment Accounts, at the direction of defendants VLEISIDES, HOUSTON, and EMMETT, defendant WALTHER and others known and unknown to the Grand Jury wrote checks falsely represented as lottery winnings and sent them back to the victims. The amount of the alleged "winnings" sent to each victim was far less than the amount the victim had sent in.

   f. At the direction of defendants VLEISIDES, HOUSTON, and EMMETT, defendant WALTHER and others known and unknown to the Grand Jury transferred some of the money from the Lottery Accounts and Payment Accounts to another set of accounts, which were in names similar to Henry Walther Attorney Wire Account ("the Syphon Accounts").

   g. At the direction of defendants VLEISIDES, HOUSTON, and EMMETT, defendant WALTHER and others known and unknown to the Grand Jury wrote checks (or transferred money by wire) from the Lottery Accounts and the Payment Accounts to the Syphon Accounts.

   h. Defendants VLEISIDES, HOUSTON, EMMETT, CLOUD, and WALTHER and others known and unknown to the Grand Jury used money from the Syphon Accounts to continue the scheme by paying scheme expenses, as well as to provide benefits to defendants VLEISIDES, HOUSTON, EMMETT, CLOUD, and WALTHER.

   i. Defendants VLEISIDES, HOUSTON, EMMETT, CLOUD, and WALTHER and others known and unknown to the Grand Jury also

1  misappropriated funds from the Lottery Accounts and Payment
2  Accounts in the form of checks to cash, checks to themselves, or
3  checks to the payment of personal or scheme expenses.
4  C.   THE MISREPRESENTATIONS AND CONCEALMENT OF MATERIAL FACTS
5       4.   In furtherance of the scheme to defraud, defendants
6  VLEISIDES, HOUSTON, EMMETT, CLOUD, and WALTHER, and others known
7  and unknown to the Grand Jury, engaged in and willfully caused
8  others known and unknown to the Grand Jury to engage in the
9  following material fraudulent and deceptive acts, practices,
10 devices, and representations, among others, and knowingly
11 concealed and caused others known and unknown to the Grand Jury
12 to conceal the following material facts, among others:
13          a.   Defendants VLEISIDES, HOUSTON, EMMETT, CLOUD, and
14 WALTHER falsely represented to victims, and caused others known
15 and unknown to the Grand Jury to falsely represent to victims,
16 that if the victims sent money to the Fraudulent Lottery and
17 Pension Companies, that money would be used to purchase tickets
18 in lotteries and other such games.  In truth and in fact, as
19 defendants VLEISIDES, HOUSTON, EMMETT, CLOUD, and WALTHER then
20 well knew, the money was not used to purchase such tickets, but
21 rather was used to send purported winnings to other victims, to
22 otherwise further the fraudulent scheme, and to benefit
23 defendants VLEISIDES, HOUSTON, EMMETT, CLOUD, WALTHER and others
24 known and unknown to the Grand Jury.
25          b.   Defendants VLEISIDES, HOUSTON, EMMETT, CLOUD, and
26 WALTHER falsely represented to victims, and caused others known
27 and unknown to the Grand Jury to falsely represent to victims,
28 that if the victims sent money to the Fraudulent Lottery and

Pension Companies, they had a chance to win millions of dollars through the Fraudulent Lottery and Pension Companies. In truth and in fact, as defendants VLEISIDES, HOUSTON, EMMETT, CLOUD, and WALTHER then well knew, no participant had a chance to win millions of dollars through the Fraudulent Lottery and Pension Companies.

c. Defendants VLEISIDES, HOUSTON, EMMETT, CLOUD, and WALTHER falsely represented to victims, and caused others known and unknown to the Grand Jury to falsely represent to victims, that previous participants in the Fraudulent Lottery and Pension Companies had won millions of dollars. In truth and in fact, as defendants VLEISIDES, HOUSTON, EMMETT, CLOUD, and WALTHER then well knew, no participant in the Fraudulent Lottery and Pension Companies had ever won millions of dollars through the Fraudulent Lottery and Pension Companies.

d. Defendants VLEISIDES, HOUSTON, EMMETT, CLOUD, and WALTHER falsely represented to victims, and caused others known and unknown to the Grand Jury to falsely represent to victims, that the Fraudulent Lottery and Pension Companies were backed by governmental and/or legitimate lottery entities. In truth and in fact, as defendants VLEISIDES, HOUSTON, EMMETT, CLOUD, and WALTHER then well knew, the Fraudulent Lottery and Pension Companies were not backed by any governmental or legitimate lottery entity.

e. Defendants VLEISIDES, HOUSTON, EMMETT, CLOUD, and WALTHER falsely represented to victims, and caused others known and unknown to the Grand Jury to falsely represent to victims, that checks sent to victims represented winnings from the

victims' participation in lotteries, horse races, or other games. In truth and in fact, as defendants VLEISIDES, HOUSTON, EMMETT, CLOUD, and WALTHER then well knew, the checks sent to victims were not from victims' winnings but were actually funds sent in by other victims.

    f.  Defendants VLEISIDES, HOUSTON, EMMETT, CLOUD, and WALTHER falsely represented to victims, and caused others known and unknown to the Grand Jury to falsely represent to victims, that winnings invested into the Fraudulent Lottery and Pension Companies' accounts would pay monthly pension checks until the end of the victim's life, and then would pay an amount to a beneficiary as if the money were a life insurance policy. In truth and in fact, as defendants VLEISIDES, HOUSTON, EMMETT, CLOUD, and WALTHER then well knew, there were no separate pension or life insurance accounts for victims, and victims would not be paid as promised.

    g.  Defendants VLEISIDES, HOUSTON, EMMETT, CLOUD, and WALTHER caused letters to be sent to victims falsely claiming to be from individuals with a background in and connection to legitimate foreign lotteries. In truth and in fact, as defendants VLEISIDES, HOUSTON, EMMETT, CLOUD, and WALTHER then well knew, the persons from whom the letters sent by the Fraudulent Lottery and Pension Company purported to be did not exist.

D.  <u>THE EFFECT OF THE SCHEME TO DEFRAUD</u>

    5.  Through the above-described scheme to defraud, defendants VLEISIDES, HOUSTON, EMMETT, CLOUD, and WALTHER caused

1  tens of thousands of victims to send over $25 million to the
2  Fraudulent Lottery and Pension Companies.
3  E.   THE MAILINGS
4       6.   On or about the dates listed below, in Los Angeles,
5  Orange, Ventura, San Louis Obispo, and Riverside Counties, within
6  the Central District of California, and elsewhere, defendants
7  VLEISIDES, HOUSTON, EMMETT, CLOUD, and WALTHER, for the purpose
8  of executing the above-described scheme to defraud, caused the
9  following items to be placed in an authorized depository for mail
10 matter and to be sent and delivered by the U.S. Postal Service
11 and to be deposited with and to be delivered by private and
12 commercial interstate carriers, according to the directions
13 thereon:

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| ONE | 03/08/02 | Letter from The Shamrock Agency to P.G. in Murrieta, California |
| TWO | 03/18/02 | Letter from World Expert Fund to L.G. in Long Beach, California |
| THREE | 03/19/03 | Letter from Old Amsterdam Gold Reserve Mutual Pension Pool to L.G. in Long Beach, California |
| FOUR | 07/31/04 | Letter from World Expert Fund/Old Amsterdam to B.B. in Laguna Woods, California |
| FIVE | 04/25/05 | Letter from World Expert Fund/Bunderschmidt to B.B. in Laguna Woods, California |
| SIX | 04/25/05 | Letter from El Gordo/Global Search Network to F.P. in Camarillo, California |
| SEVEN | 08/09/05 | Letter from World Expert Fund to L.G. in Long Beach, California |

| COUNT | DATE | DESCRIPTION |
|-------|------|-------------|
| EIGHT | 05/17/06 | Letter from World Expert Fund/Australian Lottery to D.T. in North Hollywood, California |
| NINE | 05/23/06 | Letter from World Expert Fund/Euro Pro Lottery to D.T. in North Hollywood, California |
| TEN | 05/31/06 | Letter from World Expert Fund/Euro Pro to J.S. in Paso Robles, California |
| ELEVEN | 06/23/06 | Letter from El Gordo/GSN to F.M. in Lakewood, California |

//

//

//

//

//

//

//

//

//

COUNTS TWELVE THROUGH TWENTY-THREE

[18 U.S.C. §§ 1956(a)(1)(A)(i), 2]

7. The Grand Jury hereby realleges and incorporates by reference paragraphs one through five of this Indictment.

8. On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants SONNY VLEISIDES, JAMES RAY HOUSTON, DENNIS EMMETT, WILLIAM CLOUD, and SCOTT HENRY WALTHER, knowing that the property involved in each of the financial transactions represented the proceeds of some form of unlawful activity, knowingly conducted, attempted to conduct, and aided, abetted, counseled, commanded, induced, procured, and willfully caused the following financial transactions affecting interstate commerce, which transactions in fact involved the proceeds of specified unlawful activity, that is, mail fraud, in violation of Title 18, United States Code, Section 1341, with the intent to promote the carrying on of such specified unlawful activity:

| COUNT | DATE | FINANCIAL TRANSACTION |
|---|---|---|
| TWELVE | 07/24/02 | Check number 2002, in the amount of $5,000.00, written on Wells Fargo Bank account number XXXXXX1687, in the name of North American Foreign Payment, to Western Internet Specialty Group |
| THIRTEEN | 07/24/02 | Check number 2004, in the amount of $4,918.91, written on Wells Fargo Bank account number XXXXXX1687, in the name of North American Foreign Payment, to Western Internet Specialty Group |

11

| COUNT | DATE | FINANCIAL TRANSACTION |
|---|---|---|
| FOURTEEN | 10/21/02 | Check number 1069, in the amount of $8,000.00, written on Citibank account number XXXXXXX4884, in the name of European Union Fulfilment Commission, to Mail Distribution Center |
| FIFTEEN | 11/15/02 | Check number 119, in the amount of $287.00, written on Citibank account number XXXXXX4990, in the name of World Expert Fund, to Jenill Nettleton |
| SIXTEEN | 12/10/02 | Check number 1081, in the amount of $5,000.00, written on Encino Bank account number XXXXX8795, in the name of Old Amsterdam Trust, to Western Internet Specialty Group |
| SEVENTEEN | 01/14/03 | Check number 158, in the amount of $4,995.00, written on Citibank account number XXXXXX4990, in the name of World Expert Fund, to Western Internet Specialty Group |
| EIGHTEEN | 05/19/03 | Check number 210, in the amount of $8,000.00, written on Bank of America account number XXXXXX3386, in the name of Global Search Network, to Mail Distribution Center |
| NINETEEN | 08/23/04 | Check number 1023, in the amount of $3,824.06, written on Georgia State Bank account number XXX6927, in the name of Euro American Fax, to Astro Computer Service |
| TWENTY | 12/22/03 | Check number 339, in the amount of $9,000.00, written on Bank of America account number XXXXXX3386, in the name of Global Search Network, to James Elliott |
| TWENTY-ONE | 08/30/04 | Check number 1303, in the amount of $3,824.06, written on Georgia State Bank account number XXX6927, in the name of Euro American Fax, to Picasso Press |

| COUNT | DATE | FINANCIAL TRANSACTION |
|---|---|---|
| TWENTY-TWO | 05/23/05 | Check number 2205, in the amount of $240.00, written on US Bank account number XXXXXXXX5188, in the name of The Shamrock Agency, to Wits End Delivery Service |
| TWENTY-THREE | 05/23/05 | Check number 2206, in the amount of $1,990.80, written on US Bank account number XXXXXXXX5188, in the name of The Shamrock Agency, to Western Internet Specialty Group |

A TRUE BILL

"/s/"

Foreperson

GEORGE S. CARDONA
Acting United States Attorney

THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Major Frauds Section

DAVID K. WILLINGHAM
Assistant United States Attorney
Deputy Chief, Major Frauds Section

ELLYN MARCUS LINDSAY
Assistant United States Attorney
Major Frauds Section